UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DEON GLENN,<br><br>                           Plaintiff,<br><br>v.<br><br>JODI MCCLELLAN, *et al.*,<br><br>                         Defendants. | Case No. 22-cv-10883<br>Honorable David M. Lawson<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO DENY DEFENDANT MASSEY'S MOTION TO DISMISS (ECF NO. 17)**

**I.     Introduction**

Plaintiff Deon Glenn, a prisoner confined at the Thumb Correctional Facility, filed this pro se civil rights action under 42 U.S.C. § 1983 and asserts Eighth Amendment claims against Defendants Jodi McClellan and Terri Massey. The Honorable David M. Lawson referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1). ECF No. 11. Massey moves to dismiss for failure to state a claim. ECF No. 17. For the reasons below, the Court **RECOMMENDS** that Massey's motion be **DENIED**.

## II.     Factual Background

Glenn alleges that his unit officer observed that he was in severe pain and brought him to the clinic one afternoon at about 4:00 p.m. ECF No. 1, PageID.4, 6. Nurse McClellan allegedly checked Glenn's vitals and found that his blood pressure was 220/110—a rate Glenn was later told could have led to heart failure—but dismissed the result as inaccurate. *Id.* at PageID.5-6. McClellan took a urine sample and checked Glenn's bowels but denied him medication when he told her he was in pain. *Id.* at PageID.5. Glenn claims that he was in such severe pain that he could not sit up and was "fading in and out of consciousness." *Id.*

McClellan conferred with nurse practitioner Massey about the course of treatment. *Id.* They allegedly determined that Glenn did not need to see a doctor or go to the hospital, and McClellan instructed him to lay down and call back if his symptoms worsened. *Id.* An officer called when Glenn's pain worsened, but McClellan allegedly said that Glenn did not "fit her criteria" to see a doctor or go to the hospital. *Id.* at PageID.6. Officers took Glenn to the control center, where an unnamed nurse saw him but did not check his vitals. *Id.* Glenn alleges that he was taken to the hospital by ambulance at about 9:30 p.m. after he became dizzy, was semi-conscious,

and vomited blood. *Id.* At the hospital, Glenn had emergency surgery for appendicitis. *Id.* at PageID.6, 8.

Glenn asserts Eighth Amendment claims against McClellan and Massey for withholding proper treatment for five hours. *Id.* at PageID.7-8. Massey moves to dismiss, arguing that Glenn has not stated a plausible Eighth Amendment claim. ECF No. 17.

### III. Analysis

#### A.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Id.* But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and the Court has no duty to create a claim not spelled out in the pleadings, *Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 871 n.4 (6th Cir. 2007). Pleadings filed by pro se litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers, but such complaints still must plead a plausible claim for relief. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012); *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).

**B.**

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 101 (1976). Because the government must provide medical care for those it has incarcerated, "[d]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain," and thus violates the Eighth Amendment. *Estelle*, 429 U.S. at 103-04. But a plaintiff must show more than a mere failure to provide adequate

4

medical care to prove a constitutional violation. *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). "[A] constitutional violation arises only when [a prison official] exhibits deliberate indifference to a prisoner's serious illness or injury that can be characterized as obduracy and wantonness rather than inadvertence or" good-faith error. *Id.* (cleaned up).

To prevail on a deliberate indifference claim, an inmate must satisfy both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For the objective component, Glenn must show that Massey's acts or omissions deprived him of "the minimal civilized measure of life's necessities" and posed "a substantial risk of serious harm." *Id.* The subjective component requires proof that the prison official acted with deliberate indifference, meaning that the official knew of but disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010).

Massey contends that Glenn's allegations do not satisfy the objective component. ECF No. 17, PageID.74. "A medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

5

recognize the necessity for a doctor's attention." *Blackmore v Cnty. of Kalamazoo*, 390 F.3d 890, 897 (6th Cir. 2004) (cleaned up).  Glenn's appendicitis and resulting pain, vomiting, and hypertension were obvious needs requiring medical attention.  *See id.* at 899 (appendicitis that led to severe stomach pain and vomiting was an objectively serious medical need); *see also Brown v. Osmundson*, 38 F.4th 545 (7th Cir. 2022) ("Appendicitis is an objectively serious medical condition that, left untreated, leads to a perforated (or ruptured) appendix, requiring invasive surgery to avoid serious injury and death." (cleaned up)).  This conclusion is bolstered by Glenn's allegation that his unit officer saw that he was in pain and asked if he needed medical assistance.  *See Hoffman v. Neves*, No. 17-13263, 2018 WL 5118597, at *6 (E.D. Mich. Aug. 14, 2018), *adopted*, 2018 WL 4610866 (E.D. Mich. Sept. 26, 2018) (holding that a reasonable jury could conclude that the plaintiff's pancreatitis "posed an obvious need for medical attention," when an officer and another inmate stated the plaintiff "looked bad" and was in pain).

    Massey also argues that Glenn cannot show the subjective component, as claims challenging the adequacy of treatment are not cognizable under the Eighth Amendment.  ECF No. 17, PageID.74-76.  Massey is correct that "where a prisoner has received some medical

attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (cleaned up).  So "a doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference," and a medical professional is not liable if she provides "reasonable treatment, even if the outcome of the treatment is insufficient or even harmful." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).

But a plaintiff can show deliberate indifference when a medical provider renders care that is "so woefully inadequate as to amount to no treatment at all." *Westlake*, 537 F.2d at 860 n.5; *see also Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2001) ("When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."). A medical provider "has a duty to do more than simply provide some treatment to a prisoner who has serious medical needs; instead, the [provider] must provide medical treatment to the patient without consciously exposing the patient to an excessive risk of serious harm." *Estate of Majors*, 821 F. App'x 533 (6th Cir. 2020) (quoting *LeMarbe v. Wisneski*,

7

266 F.3d 429, 439 (6th Cir. 2001)).  In such cases, a plaintiff must show that the medical care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (cleaned up).

Glenn alleges that he told McClellan he was in severe pain and that she observed that his blood pressure was 220/110.  ECF No. 1, PageID.5-6.  During the visit, Glenn allegedly could not sit up and faded in and out of consciousness.  *Id.* at PageID.5.  It is reasonable to infer that McClellan relayed this information to Massey when they conferred.  Thus, Massey allegedly knew that Glenn had alarming high blood pressure and was in so much pain that he could not sit up and was semi-conscious.  Since these potentially life-threatening symptoms presented an obvious risk of harm, a jury could conclude that Massey knew of that risk.  *See Rhinehart*, 894 F.3d at 739 ("A jury is entitled to conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

And yet Massey allegedly failed to summon a doctor, send Glenn to the hospital, or render any treatment, leaving Glenn at risk of cardiac arrest and in agonizing pain for five more hours.  ECF No. 1, PageID.5-6.  A

reasonable juror could conclude that Massey's medical care was grossly inadequate.

Courts have drawn the same conclusion in similar cases. In *Blackmore*, the plaintiff complained of abdominal pain and requested medical care; jail officials gave the plaintiff antacids but did not seek medical care until the plaintiff began to vomit and complain of extreme pain two days later. 390 F.3d at 894. The plaintiff was diagnosed with appendicitis and had surgery. *Id.* The court held that the plaintiff presented enough evidence to show deliberate indifference since the officers knew about the obvious need for medical care and unreasonably delayed treatment. *Id.* at 896, 899-900. And although the plaintiff experienced no complications because of the delay, the court reasoned that "a determination that Blackmore's appendix ruptured is not a prerequisite for his Eighth Amendment right to avoid the pain from the officers' deliberate indifference to his obvious need for medical care." *Id.* at PageID.899.

While *Blackmore* involved a delay of two days, other courts have held that a brief delay in medical care can sustain a finding of deliberate indifference if it was unreasonable under the circumstances. In *Mathison v. Moats*, the plaintiff complained of chest pain and other symptoms of a heart

attack, and a supervisory lieutenant called the on-call nurse. 812 F.3d 594, 596 (7th Cir. 2016). Relying on the lieutenant's impressions and without examining the plaintiff himself, the on-call nurse said the condition was not an emergency and that the plaintiff should go to the infirmary in the morning. *Id.* at 596, 598. The plaintiff went to the infirmary four hours later, and the same on-call nurse stated that he must be the inmate having a heart attack, implying that he knew of the substantial risk of harm. *Id.* at 598. Medical staff sent the plaintiff to the emergency room, where he was diagnosed with a heart attack. *Id.* at 596. The Court held that the on-call nurse's failure to take any action for four hours amounted to deliberate indifference. *Id.* at 599-99 ("We think that civilization requires more in a life and death situation, and are left to wonder what the [district] judge thinks the minimum level of care is to which a prisoner who is suffering a heart attack is entitled.").

And in *Hoffman*, the plaintiff visited the clinic at 7:00 a.m. for severe abdominal pain and a history of pancreatitis. 2018 WL 5118597, at *1. Dr. Rhodes ordered the plaintiff to be taken to the hospital, but nurse Carlson did not send him because she and the plaintiff had a dispute. *Id.* At 12:45 p.m., the plaintiff again complained of abdominal pain, and his unit officer spoke to Carlson. *Id.* Carlson took the complaint to Dr. Rhodes and told

10

the unit officer that the plaintiff would have to wait until 2:00 p.m. to be seen. *Id.* at *2. The parties disputed whether Dr. Rhodes told Carlson the plaintiff would have to wait, or if Carlson acted independently. *Id.* The plaintiff was eventually seen at 3:20 p.m. and was sent to the hospital, where he was treated for pancreatitis. *Id.* The court determined that if Carlson acted independently in telling the plaintiff to wait until 2:00 to be seen, a reasonable jury could conclude that she was deliberately indifferent in delaying his treatment. *Id.* at *7. The court noted that:

> [Carlson] was aware [the plaintiff] was ordered to be sent to the hospital earlier that day for same complaints he raised at 12:45 pm, she was aware of his history of pancreatitis, she was aware (presumably) that he did not go to the hospital that morning, and she was aware that plaintiff could 'possibly' suffer complications from pancreatitis between 7:00 am and 12:45 pm. Carlson also disregarded MDOC policy and standing orders which require nurses to assess the inmate before taking the complaint to the medical provider.

*Id.*

Given the obvious risks from Glenn's alarmingly high blood pressure and severe pain, a jury could conclude here that Massey acted with deliberate indifference by unreasonably delaying sending him to the hospital or consulting a doctor.

Massey disputes some of Glenn's factual allegations, noting that the prison's grievance response stated that McClellan's abdominal examination

11

findings were normal, that Massey ordered over-the-counter pain medications that Glenn refused, and that Glenn was taken to the hospital shortly after he was seen in the clinic.[1]  ECF No. 17, PageID.75 (citing ECF No. 1, PageID.15).  Massey argues that the Court may consider the facts set forth in the grievance response because Glenn attached the grievance records to his complaint.  *Id.*

Although the plausibility of a complaint is usually assessed on the face of the complaint, "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," and may be considered on a motion to dismiss.  Fed. R. Civ. P. 10(c) (cleaned up); 5A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 1327 (4th ed. 2022).  Courts in this circuit define "written instrument" as:

> a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement.  The documents that satisfy this definition consist largely of documentary evidence, specifically, contracts, notes, and other writings on which a party's action or defense is based.

---

[1] The grievance response states that Glenn was first seen in the clinic at 5:22 p.m. and was taken to the hospital at 9:00 p.m.  ECF No. 1, PageID.15.

*Steverson v. Walmart*, No. 3:19-cv-00140, 2019 WL 3822179, at *2 (M.D. Tenn. Aug. 15, 2019) (cleaned up); *see also Matter of Gilfix*, No. 21-CV-10330, 2021 WL2805801, at *4 (E.D. Mich. July 6, 2021); *Bowens v. Aftermath Enter.*, 254 F. Supp. 2d 629, 639 (E.D. Mich. 2003). Thus, Rule 10(c) typically applies when, for example, a court considers a contract in deciding whether the plaintiff has stated a plausible breach-of-contract claim.

But courts decline to construe exhibits attached to complaints as written instruments when they do not "define the rights and obligations of the parties" and instead are "the sort of lengthy exhibit[s] containing extraneous or *evidentiary material* that should not be attached to the pleadings." *Bowens*, 254 F. Supp. 2d at 640 (cleaned up, emphasis in original); *see also In re Empyrean Biosciences, Inc. Sec. Litig.*, 219 F.R.D. 408, 413 (N.D. Ohio 2003) (declining to "transform the evidentiary support offered in the form of an affidavit from [plaintiffs'] counsel into substantive allegations based on Rule 10(c)").

The grievance records here are evidentiary material and not written instruments. *See Robison v. Coey*, No. 2:15-cv-944, 2016 WL 4721209, at *7-8 (S.D. Ohio Sept. 9, 2016) (a prisoner's grievance history form attached to a defendant's answer and motion to dismiss was not a written instrument

13

because it did not evidence legal rights or duties). Unlike a contract, the prison's grievance response is not necessarily an accurate or objective account of the events at issue. And Massey relies on the grievance response as evidentiary material to disprove Glenn's version of events. But the records attached to the complaint also contain Glenn's grievance, which matches the allegations made in this complaint. *See* ECF No. 1, PageID.11-14. Even if the Court considered the grievance records, they would merely present a question of fact that the Court cannot resolve at this stage. *See Bowens*, 254 F. Supp. 2d at 640 ("Defendants' characterizations of the [disputed exhibit] serve only to create questions of fact that the Court cannot resolve on a motion to dismiss."). The Court declines to consider the grievance response at this stage.

## IV. Conclusion

The Court **RECOMMENDS** that Massey's motion for to dismiss be **DENIED** (ECF No. 17).

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: December 5, 2022

## **NOTICE TO THE PARTIES ABOUT OBJECTIONS**

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

 The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 5, 2022.

          s/Marlena Williams
          MARLENA WILLIAMS
          Case Manager