UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DEON GLENN,<br><br>                                    Plaintiff,<br><br>v.<br><br>JODI MCCLELLAN, *et al.*,<br><br>                                    Defendants. | Case No. 22-cv-10883<br>Honorable David M. Lawson<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT
MCCLELLAN'S MOTION FOR SUMMARY JUDGMENT
(ECF NO. 38)**

## I.    Introduction

Plaintiff Deon Glenn, a prisoner of the Michigan Department of Corrections, filed this pro se civil rights action under 42 U.S.C. § 1983 and asserts an Eighth Amendment claim against Defendants Jodi McClellan and Terri Massey.  ECF No. 1.  The Honorable David M. Lawson referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 11.  McClellan moves for summary judgment.  ECF No. 38.  For the reasons below, the Court **RECOMMENDS** that McClellan's motion be **GRANTED**.

## II.    Background

On the morning of September 12, 2021, Glenn began to experience abdominal pain.  ECF No. 38-2, PageID.194; ECF No. 39-3, PageID.279. Glenn was still in pain at 4:30 p.m., but he refused to see healthcare.  ECF No. 38-3, PageID.219; ECF No. 39, PageID.256.  He later agreed and saw Nurse McClellan at 5:20 p.m.  ECF No. 38-2, PageID.194.  McClellan checked his vitals, examined him, and took his medical history.  ECF No. 38-2, PageID.194-195.  McClellan called Nurse Practitioner Massey, the on-call medical provider authorized to make diagnoses and treatment plans, to report the findings.  *Id.*, PageID.195-196; ECF No. 39-4, PageID.293-294.  Massey told McClellan to perform a urinalysis, give Glenn an over-the-counter pain reliever, and tell him to notify healthcare if his symptoms worsened.  ECF No. 38-2, PageID.195-196.

When McClellan returned to discuss the plan with Glenn, he was laying on the floor because of the pain.  *Id.*, PageID.195-196; ECF No. 39-4, PageID.286.  McClellan called Massey a second time to report the development, but Massey's instructions remained the same.  ECF No. 38-2, PageID.196; ECF No. 39-4, PageID.286.  Glenn refused the over-the-counter pain reliever and returned to his unit in a wheelchair.  ECF No. 38-2, PageID.196; ECF No. 39-3, PageID.274.  McClellan's shift ended at 6:00

2

p.m., and Nurse Haubenstricker took over care.  ECF No. 39-4, PageID.286-287.

A housing unit officer called healthcare at 7:30 p.m. because Glenn complained of worsening pain.  ECF No. 38-3, PageID.220.  Healthcare refused to see Glenn, so the unit officer sent him to the control center for observation.  *Id.*; ECF No. 39-3, PageID.275.  Glenn's pain became unbearable, and he had chest pain, dizziness, and vomiting, and lost consciousness.  ECF No. 39-3, PageID.275-276.

At 9:00 p.m., Haubenstricker checked Glenn's vitals and examined him.  ECF No. 38-2, PageID.191-192.  She observed that he had tears in his eyes, could not speak in full sentences, and vomited after the examination.  *Id.*  Haubenstricker called Massey, who agreed to send Glenn to the emergency room.  *Id.*  At the hospital, Glenn was diagnosed with appendicitis requiring surgery.  ECF No. 39-7, PageID.308.

Glenn asserts an Eighth Amendment claim against McClellan and Massey for withholding proper treatment.  ECF No. 1, PageID.7-8.  McClellan moves for summary judgment.  ECF No. 38.

### III.    Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the absence of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Id.* at 324.  The Court must view the factual evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

4

**B.**

The Eighth Amendment protects against the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 101 (1976).  Because the government must provide medical care for those it has incarcerated, "[d]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain," and thus violates the Eighth Amendment.  *Estelle*, 429 U.S. at 103-04.  But a plaintiff must show more than a mere failure to provide adequate medical care to prove a constitutional violation.  *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).  "A constitutional violation arises only when [a prison official] exhibits deliberate indifference to a prisoner's serious illness or injury that can be characterized as obduracy and wantonness rather than inadvertence or" good-faith error.  *Id.* (cleaned up).

To prevail on a deliberate indifference claim, an inmate must satisfy both an objective and subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  For the objective component, Glenn must show that that McClellan's acts or omissions deprived him of "the minimal civilized measure of life's necessities" and posed "a substantial risk of serious harm."  *Id.*  The subjective component requires proof that the prison official acted with deliberate indifference, meaning that the official knew of but

disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010).

## 1.

Glenn cannot satisfy the objective component. There is no dispute that Glenn's appendicitis was a serious medical need. "A serious medical need alone can satisfy th[e] objective element if doctors effectively provide no care for it." *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021). But an inmate who received treatment and claims that it was inadequate must show that his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737 (cleaned up). To prove grossly inadequate care, a plaintiff must offer medical evidence, typically in the form of expert testimony, to show that the treatment was inadequate and caused harm. *Id.* at 738; *see also Phillips*, 14 F.4th at 535.

Glenn received some treatment. He complained to McClellan of severe pain in his abdomen but denied nausea and vomiting. ECF No. 38-2, PageID.194. McClellan checked Glenn's vitals, which were normal except for an elevated blood pressure of 179/89. *Id.*, PageID.195.

6

Although Glenn says that his first blood pressure reading was 220/110, he admits that McClellan found the reading inaccurate and that his second reading was 179/89.  ECF No. 39-3, PageID.273.  McClellan also examined Glenn's abdomen, which was not distended or tender on palpation.  ECF No. 38-2, PageID.195.  She noted that Glenn walked independently and that he was making jokes and laughing during the assessment.  *Id.*, PageID.194.

McClellan reported her findings to Massey.  *Id.*, PageID.195-196. Despite Glenn's abdominal pain, the lack of other symptoms prevented Massey from making a diagnosis, so she determined that Glenn should be monitored for any changes in his condition.  ECF No. 39-6, PageID.301-304.  Massey told McClellan to perform a urinalysis, give Glenn an over-the-counter pain reliever, and tell him to notify healthcare as soon as possible if his symptoms worsened.  ECF No. 38-2, PageID.195-196; ECF No. 39-4, PageID.285.  The urinalysis was negative.  ECF No. 38-2, PageID.208; ECF No. 39-4, PageID.291.  When McClellan returned to the lobby to discuss the results with Glenn, he was laying on the floor and could not get up because of the pain.  ECF No. 38-2, PageID.195-196; ECF No. 39-4, PageID.286.  Glenn maintains that he was "fading in and out of consciousness," while McClellan claims that he was conscious and

7

talking to her.  ECF No. 39-3, PageID.274; ECF No. 39-4, PageID.286, 292.

McClellan called Massey again to report that Glenn was laying on the floor in pain and could not get up.  ECF No. 38-2, PageID.196; ECF No. 39-4, PageID.286.  Massey told McClellan to ask custody for assistance in transporting Glenn back to his unit and to instruct Glenn to notify healthcare if his condition worsened.  ECF No. 38-2, PageID.196; ECF No. 39-4, PageID.286, 291.  Glenn refused the over-the-counter pain relievers that McClellan offered and returned to his unit in a wheelchair.  ECF No. 38-2, PageID.196; ECF No. 39-3, PageID.274.

Glenn offers no expert reports or other medical evidence showing that this care was grossly inadequate.  Instead, he argues that he was not sent to the hospital despite needing urgent medical attention.  ECF No. 39, PageID.260.  But this argument amounts to a disagreement with the care provided.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (cleaned up).  So "the fact that a prisoner disagrees with a course of treatment that was prescribed, or even that the treatment

8

he did receive was negligently administered, does not rise to a constitutional violation." *Jennings v. Al-Dabagh*, 275 F. Supp. 2d 863, 870 (E.D. Mich. 2003).

In an earlier report and recommendation, the Court found that Glenn adequately alleged that he received grossly inadequate care, as the pleadings suggested that his condition was life-threatening.  ECF No. 21, PageID.94-96; *see also* ECF No. 22.  Glenn alleged that he was semi-conscious and that his blood pressure was alarmingly high at 220/110, which, he was told, could have led to cardiac arrest.  ECF No. 21, PageID.89, 94-96.  But the evidence shows that Glenn's condition was not life-threatening when McClellan examined him.  Although Glenn was in severe pain and may have been "fading in and out of consciousness" when he saw McClellan, his blood pressure was lower than alleged, at 179/89.  McClellan stated that the reading did not indicate a high risk of heart attack or stroke.  ECF No. 39-4, PageID.285.  And Massey stated that the reading was elevated because Glenn was in pain.  ECF No. 39-6, PageID.302.  Glenn offers no evidence rebutting those assessments.

Glenn also argues that his care was inadequate because McClellan refused to see him after he returned to his unit, even though his condition had worsened.  ECF No. 39, PageID.259-260.  First, he claims that

9

McClellan declined to see him at 6:40 p.m.  *Id.*, PageID.257.  But the unit logbook only records McClellan and Massey's determination that Glenn did not meet the requirements to be sent to the hospital, not that McClellan declined to see him.  ECF No. 38-2, PageID.219-220.

Second, Glenn claims that McClellan declined to see him at 7:30 p.m. ECF No. 39, PageID.257.  The unit logbook states that an officer "called healthcare [and] they refused to see [Glenn]."  ECF No. 38-3, PageID.220. But the healthcare employee who declined is not named.  *Id.*  Glenn admitted that he did not know the identity of the healthcare employee with whom the officer spoke.  ECF No. 39-3, PageID.275.  And McClellan's shift ended at 6:00 p.m., well before the logbook entry was made.  ECF No. 39-4, PageID.286-287.  Glenn has not shown that McClellan refused to see him.

## 2.

Nor can Glenn satisfy the subjective component of deliberate indifference.  Given Glenn's severe pain and elevated blood pressure, McClellan thought that he may need medical care.  ECF No. 39-4, PageID.285.  And when McClellan saw Glenn laying on the floor in the lobby, she again thought that he may need medical care.  *Id.*, PageID.286. But McClellan clarified that she did not believe that Glenn's condition was

10

emergent.  *Id.*, PageID.292.  Nor did McClellan suspect that Glenn had

appendicitis, as he did not have a fever, vomiting, nausea, or rebound

tenderness.  *Id.*, PageID.287, 289.

     McClellan twice reported her findings to Massey, who said each time

that McClellan should offer Glenn over-the-counter pain medication and tell

him to report to healthcare if his symptoms worsened.  *Id.*, PageID.285-

286.  McClellan deferred to Massey's instructions, as she lacked the

authority to diagnose patients or order treatment; those decisions were to

be made by a medical provider like Massey.  *Id.*, PageID.293-294.  Glenn

highlights Massey's testimony that nurses can send patients to the hospital

without calling the medical provider in emergent situations.  ECF No. 39-6,

PageID.305.  Even so, McClellan subjectively believed that she lacked

authority to send patients to the hospital without a medical provider's

approval unless the patient was unconscious and the medical provider was

unavailable.  ECF No. 39-4, PageID.285, 292.  That was not the case here.

     This case aligns with *Winkler v. Madison Cnty.*, in which the

defendant Nurse Johnson took an inmate's vital signs when he complained

of an upset stomach, chills, and body aches and told her that he was

experiencing heroin withdrawal.  893 F.3d 877, 886, 894 (6th Cir. 2018).

Johnson relayed that information to a supervising medical provider and

followed the provider's instructions to give the inmate medication for high blood pressure and opiate withdrawal.  *Id.* at 886, 894.  Three days later, after complaining to jail and healthcare personnel about worsening symptoms, the inmate died from a perforated intestinal ulcer.  *Id.* at 889-90.

The Sixth Circuit held that the subjective component was not satisfied, as Johnson "gathered information about [the inmate's] condition, provided it to a medical professional qualified to evaluate him, and followed the directions of that medical professional."  *Id.* at 894.  Johnson believed that the inmate was suffering from opiate withdrawal and was being adequately treated for that condition.  *Id.*

Likewise, Glenn cannot show that McClellan disregarded a known risk.  McClellan examined Glenn, reported her findings to Massey, and followed Massey's orders.  No evidence suggests that McClellan subjectively believed that Massey's treatment plan was inappropriate. Although McClellan admitted that Glenn's condition "gave her pause" to think that he needed medical care, she did not believe that his condition was emergent.  ECF No. 39-4, PageID.285-286, 292.  At most, the evidence shows that McClellan failed to accurately diagnose Glenn with appendicitis, not that she was deliberately indifferent.  *See, e.g.*, *Sedore v. Campbell*, No. 19-10311, 2022 WL 6849123, at *12 (E.D. Mich. Aug. 4,

2022), *adopted*, 2022 WL 4483815 (E.D. Mich. Sept. 27, 2022) (a

misdiagnosis amounts to medical negligence, not deliberate indifference);

*Merritt-Ruth v. Frey-Latta*, No. 14-12858, 2016 WL 6834037, at *5 (E.D.

Mich. Nov. 21, 2016) (nurse was not deliberately indifferent where she

failed to diagnose appendicitis and instead treated the inmate for a urinary

tract infection).

## C.

Even if a constitutional violation occurred, McClellan is entitled to

qualified immunity.  Qualified immunity shields government officials "from

liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person

would have known."  *Smith v. City of Wyoming*, 821 F.3d 697, 708 (6th Cir.

2016) (cleaned up).  When analyzing a qualified immunity defense, courts

must consider "(1) whether the facts that a plaintiff has shown at the

summary judgment stage make out a violation of a constitutional right; and

(2) whether the right at issue was clearly established at the time of

defendant's alleged misconduct."  *Id.* (cleaned up).

In *Est. of Majors v. Gerlach*, several nurse defendants failed to

question medical providers' decisions not to treat an inmate's multiple

sclerosis, which led to severe brain damage and the inmate's death.  821

13

F. App'x 533, 536 (6th Cir. 2020). The inmate's estate argued that the nurses "should have exercised their own independent medical judgment and more strenuously advocated for [the inmate] to receive" different treatment rather than defer to medical providers' treatment plan. *Id.* at 547.

Relying on *Winkler*, the Sixth Circuit held that the nurses were entitled to qualified immunity because there was "no clearly established law that [their] decision to defer to the judgment of their supervising medical providers who had diagnostic and treatment authority consciously exposed [the inmate] to an excessive risk of serious harm." *Id.* (cleaned up). Glenn has cited no authority altering the Sixth Circuit's conclusion that no clearly established law required nurses to second-guess the judgment of medical providers.

## IV. Conclusion

The Court **RECOMMENDS** that McClellan's motion for summary judgment be **GRANTED** (ECF No. 38).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: August 2, 2024

## <u>NOTICE TO THE PARTIES ABOUT OBJECTIONS</u>

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

15

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 2, 2024.

<u>s/Donald Peruski</u>
DONALD PERUSKI
Case Manager

16