UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEON GLENN,

                 Plaintiff,                       Case Number 22-10883

v.                                        Honorable David M. Lawson
                                             Magistrate Judge Elizabeth A. Stafford

JODI McCLELLAN and TERI MASSEY,

                 Defendants.

_____/

**OPINION AND ORDER ADOPTING IN PART REPORT AND RECOMMENDATION, SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS, GRANTING DEFENDANT McCLELLAN'S MOTION FOR SUMMARY JUDGMENT, VACATING ORDER OF REFERENCE, AND SETTING STATUS CONFERENCE**

Plaintiff Deon Glenn, a Michigan prisoner, filed a complaint without the assistance of an attorney against two medical employees of the Michigan Department of Corrections alleging that they failed to attend to his serious medical needs while he was confined at the Thumb Correctional Facility in Lapeer, Michigan. Glenn alleges that the defendants refused to provide him with appropriate medical care when he was in extreme pain and physical distress, suffering from what turned out to be acute appendicitis. The case was referred to Magistrate Judge Elizabeth A. Stafford to conduct all pretrial proceedings. Thereafter, defendant Jodi McClellan filed a motion for summary judgment. Magistrate Judge Stafford filed a report on August 2, 2024 recommending that the motion be granted. The plaintiff, having since obtained counsel, filed timely objections to the report and recommendation, and the motion is before the Court for fresh review.

I.

A.

On September 12, 2021, at approximately 2:30 p.m., Glenn reported to a correctional officer that he was experiencing severe abdominal pain. Deon Glenn dep., ECF No. 39-3,

PageID.273, 280.  The correctional officer contacted nurse Jodi McClellan, who advised the officer to tell Glenn to report back if his pain worsened.  *Id.* at PageID.273.  Later that afternoon, Glenn reported to the officer that his pain had gotten worse.  *Ibid.*  Glenn testified that the officer told him that he called McClellan, but she said that he still did not meet the criteria for treatment.  *Ibid.* McClellan does not recall these conversations.  Jodie McClellan dep., ECF No. 39-4, PageID.285.

Eventually, Glenn was taken to the prison's clinic a little after 5:00 p.m. where he saw McClellan.  *Id*. at PageID.288.  He told McClellan that he was experiencing pain in the left lower quadrant region of his abdomen and reported that his pain was at a "10 out of 10."  *Id*. at PageID.285; Medical Records, ECF No. 39-5, PageID.296.  On examination, McClellan found that Glenn's blood pressure was 220 over 110.  Concerned that this figure was inaccurate, she ran the test again, producing another elevated but lower reading of 179 over 89.  McClellan dep., ECF No. 39-4, PageID.285; Glenn dep., ECF No. 39-3, PageID.273.  McClellan testified that the combination of these factors caused her to believe that Glenn was in urgent need of medical attention.  McClellan dep., ECF No. 39-4, PageID.285.  However, she also testified that her examination included a physical inspection of Glenn's abdomen and palpitation of his left lower quadrant to test for increased pain, which is curious since the appendix generally is located in the *right* lower quadrant of the abdomen, although Glenn did complain of pain on his left side.  In any event, her palpitation of the left side did not produce pain.  *Id.* at PageID.289.  And Glenn's temperature, pulse, and blood oxygen level all appeared normal to her as well.  *Ibid.*  She found that these factors were not consistent with a diagnosis of appendicitis.  *Id.* at PageID.287.  Pursuant to the prison's policy, McClellan called nurse practitioner defendant Terri Massey, the on-call medical provider, to discuss Glenn's case.  *Id.* at PageID.285. Massey directed her to perform a urinalysis to check for a urinary tract infection and to give Glenn an over-the-counter pain

medication.  *Ibid.*  McClellan did not inform Massey of her belief that Glenn needed serious medical attention.  *Ibid.*

McClellan returned to the clinic lobby where she found Glenn laying on the floor.  Glenn told her that his stomach pain was so severe that he could not get up, a fact that would have "give[n] [her] pause that he was in need of medical care."  *Id.* at PageID.286.  Glenn says that he was "fading in and out of consciousness."  Glenn dep., ECF No. 39-3, PageID.274.  Glenn's medical records state that he refused the over-the-counter medication.  Medical Records, ECF No. 39-5, at PageID.290.  McClellan called Massey a second time to inform her of Glenn's condition, but Massey told her to send him back to his cell.  *Ibid.*  McClellan did not argue with this direction and instructed the officers to take Glenn to the housing unit with the instruction to contact the health unit if his symptoms worsened.  McClellan dep., ECF No. 39-4, PageID.286, 291.  Glenn testified that he had to be escorted back to his cell in a wheelchair.  Glenn dep., ECF No. 39-3, PageID.274.  McClellan says that her shift ended between 6:00 and 6:30 p.m. and that she did not see Glenn again that evening.  McClellan dep., ECF No. 39-4, PageID.286.  She also testified that she lacked the authority to send a patient to the hospital herself unless he was unconscious and a medical provider was unavailable.  *Id.* at PageID.292.

At approximately 7:30 p.m., Glenn reported to correctional officers that his pain had again worsened.  A housing unit officer called health care, but the health unit refused to see him, so the officer sent him to the control center for observation.  Prison Logbook, ECF No. 38-3, PageID.220. In the control center, Glenn's pain became so severe that he could not sit up; he began vomiting and experienced chest pains and dizziness.  Glenn dep., ECF No. 39-3, PageID.275-76.  Around 9:00 p.m., he was seen by Nurse Belinda Haubenstricker, who observed that Glenn was laying on his side, vomiting, "had tears in his eyes when being assessed and was not able to speak in full

sentence responses." Medical Records, ECF No. 38-2, PageID.191-92. Haubenstricker called Massey to report these findings. Massey finally advised that Glenn should be taken to the hospital. Terri Massey dep., ECF No. 39-6, PageID.303-04. At the hospital, Glenn was diagnosed with acute appendicitis and ultimately transferred to McLaren Hospital in Lansing for surgery. Hospital Records, ECF No. 39-7, PageID.308.

B.

On April 19, 2022, Glenn, initially proceeding without the assistance of counsel, filed this action against McClellan and Massey under 42 U.S.C. § 1983, alleging a violation of his Eighth Amendment rights. He contended that the defendants were deliberately indifferent to his medical needs because they saw his physical condition exhibiting intractable pain and failed or refused to provide appropriate medical care.

Defendant McClellan moved for summary judgment seeking qualified immunity on Glenn's claim. On August 2, 2024, Magistrate Judge Stafford issued a report recommending that the Court grant that motion.

It is well known that the State's jailors have "an 'obligation to provide medical care for those whom it is punishing by incarceration.'" *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

To establish a claim under the Eighth Amendment for deliberate indifference, Glenn must offer evidence showing that he suffered a serious medical condition that would have been apparent to someone in the position of the defendants (the objective component) and that the defendants actually perceived that condition and intentionally disregarded the risk to Glenn (the subjective

component). *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). In her report, the magistrate judge determined that Glenn failed to offer evidence on either of these components. She suggested that because Glenn received some treatment, he needed to demonstrate, using medical evidence, that the treatment was inadequate. She emphasized that Glenn failed to offer any expert reports or medical evidence demonstrating that the care he received was grossly inadequate. Based on the record, she found that Glenn's condition was not life-threatening when McClellan examined him and that he had not submitted evidence establishing that McClellan had declined to see him again after he was returned to the housing unit.

Judge Stafford also held that Glenn could not satisfy the subjective component of his claim and could not show that McClellan was culpable. She emphasized McClellan's testimony that she did not believe Glenn's condition was emergent and that he did not have certain symptoms consistent with appendicitis, such as a fever, vomiting, nausea, or rebound tenderness. Judge Stafford also credited McClellan's testimony indicating that she generally lacked the authority to send patients to the hospital without a medical provider's approval.

Finally, Judge Stafford explained that even if McClellan committed a constitutional violation, she was entitled to qualified immunity because there was "no clearly established law that [a nurse's] decision to defer to the judgment of their supervising medical providers who had diagnostic and treatment authority consciously exposed [the inmate] to an excessive risk of serious harm." *See Est. of Majors v. Gerlach*, 821 F. App'x 533, 536 (6th Cir. 2020) (cleaned up).

Through counsel, Glenn filed timely objections to the report and recommendation.

## II.

When a party files timely objections to a report and recommendation, the court must "make a *de novo* determination of those portions of the report or specified proposed findings or

recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P.

72(b)(2), (3) (requiring court review of "any part of the magistrate judge's disposition *that has*

*been properly objected to*") (emphasis added); *United States v. Raddatz*, 447 U.S. 667

(1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  This fresh review requires the

court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in

order to determine whether the recommendation should be accepted, rejected, or modified in whole

or in part.  28 U.S.C. § 636(b)(1).

But this review is not plenary.  "The filing of objections provides the district court with the

opportunity to consider the specific contentions of the parties and to correct any errors

immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues —

factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147

(1985).  As a result, "[o]nly those specific objections to the magistrate's report made to the district

court will be preserved for appellate review; making some objections but failing to raise others

will not preserve all the objections a party may have." *McClanahan v. Comm'r of Soc. Sec.*, 474

F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Tchrs. Loc. 231*, 829 F.2d 1370,

1373 (6th Cir. 1987)).

A.

First, Glenn takes issue with the magistrate judge's conclusion as to both the objective and

subjective portions of his claim.  He argues that she misstated the law on the objective component

of his claim by framing the inquiry as whether "McClellan's acts or omissions deprived him of the

minimal civilized measure of life's necessities and posed a substantial risk of harm." ECF No. 42,

PageID.343.  He maintains that the correct standard requires evaluating whether he has

demonstrated a medical need so obvious that a lay person would easily recognize the need for a

doctor's attention, which the record demonstrates here.  He further argues that a fact dispute remains on the subjective component of his claim, pointing to McClellan's testimony that seeing his condition gave her pause about whether he needed serious medical attention, her admission that he was in need of urgent medical care when he lay on the floor of the clinic lobby, and the fact that she observed that he could not walk back to the housing unit.

1.

To establish the objective component of a deliberate indifference claim under the Eighth Amendment, a plaintiff must show the existence of a "sufficiently serious" medical need. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  However, "*Farmer* requires only that 'the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm[,]' so as to avoid 'the unnecessary and wanton infliction of pain.'" *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 896 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 834).  A serious medical need may be demonstrated by a physician's diagnosis mandating treatment or a condition that "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 897 (citations omitted).

Glenn's objection to the magistrate judge's articulation of the applicable law generally describing the objective component is unpersuasive.  The quote from *Farmer* used by the magistrate judge is a correct statement of the law insofar as it describes the objective element of a general deliberate indifference claim. *See, e.g.*, *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021).  However, this statement of law has been refined in the context of inadequate medical care claims. *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021) ("To prove this objectively serious harm in the health context, prisoners must first establish that they have serious medical needs. They can do so, for example, by showing that a doctor has diagnosed a condition as requiring

- 7 -

treatment or that the prisoner has an obvious problem that any layperson would agree necessitates care.  A serious medical need alone can satisfy this objective element if doctors effectively provide no care for it.") (citations omitted).  The magistrate judge's failure to use Glenn's preferred articulation of the standard is not the main source of his disagreement with her analysis.  Rather, the core of his objection is with her determination that his claim follows the line of cases where some medical care was provided.

The Sixth Circuit has said that for an inmate establishing the objective component where *ongoing* medical care has been rendered, the "care qualifies as 'cruel and unusual' only if it is 'so grossly incompetent' or so grossly 'inadequate' as to 'shock the conscience' or 'be intolerable to fundamental fairness.'"  *Phillips*, 14 F.4th at 535 (quoting *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)).  The magistrate judge acknowledged that appendicitis was a serious medical need but held that Glenn had received treatment for it and therefore needed to offer medical evidence to demonstrate that he had received grossly inadequate care.  ECF No. 41, PageID.320-21.  But she failed to account for the well-established caveat that "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."  *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843-44 (6th Cir. 2002) (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989)).

Glenn, albeit somewhat indirectly, argues that the magistrate judge improperly applied this added burden to his claim because McClellan provided him *no* care after she observed him lying on the floor of the clinic.  He also argues that additional medical evidence is not required to satisfy the objective component when cursory medical treatment, in response to an obvious need, amounts to no treatment at all.  An inmate's obligation to provide medical evidence to prove the objective

element is relaxed where "a prisoner receives such 'cursory' treatment that it effectively amounts to no care." *Phillips*, 14 F.4th at 538 (citing *Rhinehart*, 894 F.3d at 737).

Glenn has a point.  The magistrate judge's analysis conflates two distinct portions of Glenn's narrative, ultimately missing the significant lapse in care in his case.  All acknowledge that McClellan examined Glenn, palpated his abdomen, checked his vital signs, and then returned him to the lobby of the health unit while she consulted with Massey.  McClellan dep., ECF No. 39-4, PageID.289-90; Glenn dep., ECF No. 39-3, PageID.274.  Viewing that evidence in the light most favorable to Glenn, as the Court must, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986), it is easy to say that Glenn was examined but not treated during his first encounter with McClellan.  Moreover, the situation changed once McClellan concluded her call with Massey and returned to the lobby to find Glenn lying on the ground.  McClellan dep., ECF No. 39-4, PageID.290.  Glenn testified that he was "fading in and out of consciousness" and that he could not stand up to walk back to his cell.  Glenn dep., ECF No. 39-3, PageID.274.  McClellan reported in her notes that Glenn was covering his eyes and stating that he could not get up because his stomach hurt too badly.  Medical Records, ECF No. 38-2, PageID.196.  To the extent that these accounts diverge, Glenn's must be accepted at the summary judgment stage of the case.  *Ibid.*  And if true that he had lost consciousness, this development marks a significant turn and is distinct from his original presentation, which focused solely on his pain.

However, the record reflects that McClellan's only response to finding Glenn on the floor of her clinic, reportedly fading in and out of consciousness, was to call Massey a second time and follow her recommendation to send Glenn back to his cell with instructions to notify medical staff if his condition worsened.  *Ibid.*  The record does not conclusively establish whether she stepped into the lobby again to evaluate Glenn after she ended her second call to Massey.  And although

Glenn's medical records indicate he "refused" over-the-counter pain medication, Medical Records, ECF No. 38-2, PageID.196, it is unclear how he could have done so if he lacked consciousness or what good these medications would have done for him.  To the extent these actions amount to "treatment," discharging a patient under the circumstances, even under the direction of a supervising medical provider, represents care that is so cursory that it amounts to no treatment at all.  *Phillips*, 14 F.4th at 538.

The magistrate judge credited certain evidence suggesting that Glenn's condition was not life threatening, such as the fact that one of his blood pressure readings was 179/89; but this reading was taken during McClellan's initial examination *before* she emerged from the clinic and found Glenn on the ground.  Glenn dep., ECF No. 39-3, PageID.273.  And although not as high as the initial reading, it was an elevated blood pressure.  There is no evidence that she took his blood pressure again.  Glenn's loss of consciousness presented an obvious need for medical treatment, and the record, viewed in the light most favorable to Glenn, suggests that McClellan offered little, if any, real treatment in response to this need.  Glenn did not need medical evidence to establish the objective component of his claim.  *Rhinehart*, 894 F.3d at 737.  And a loss of consciousness clearly is a serious medical need because it is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Blackmore*, 390 F.3d at 899.  Nor is the fact that Glenn later received treatment determinative because the requirement to submit verifying medical evidence in claims where treatment has been delayed "does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers."  *Id.* at 898.

Glenn has presented sufficient evidence to create a fact dispute on the objective component of his claim.

2.

Glenn also contests the magistrate judge's determination that he failed to create a fact question on the subjective part of his claim. On this element, the plaintiff must offer evidence that "would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [s]he did in fact draw the inference, and that [s]he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703(6th Cir. 2001). Deliberate indifference requires "more than negligence or the misdiagnosis of an ailment." *Id.* at 703 (citations omitted). Courts must "distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

In her report, the magistrate judge again credited McClellan's testimony that she did not think Glenn's condition was emergent, her findings that Glenn did not meet certain criteria indicative of appendicitis, and her testimony that she lacked the authority to send a patient to the hospital unless he was unconscious and a medical provider was unavailable. She held that the evidence showed, at most, that McClellan failed to diagnose Glenn accurately, not that she was deliberately indifferent to his medical needs. Glenn argues that the evidence actually supports an inference that McClellan understood the severity of his condition and asserts that there are fact disputes about whether McClellan refused to see him again, which could establish her disregard of his risky predicament.

The Court agrees with the plaintiff. Contrary to the magistrate judge's conclusion, Glenn has offered sufficient evidence to establish a question of fact on whether McClellan was culpable for failing to ensure he received constitutionally adequate treatment.

- 11 -

Again, the problem with the magistrate judge's report is its focus on the initial aspect of Glenn's encounter with the defendant. It primarily centers on McClellan's initial examination of Glenn and her later decision not to furnish much treatment dictated by Massey. But Glenn alleges more than mere dissatisfaction with McClellan's decision to give him common pain relief and send him on his way. The magistrate judge's analysis does not give sufficient recognition to the fact — apparently undisputed — that moments later McClellan found Glenn laying on the floor of the clinic lobby. McClellan dep., ECF No. 39-4, PageID.290. And the magistrate judge's report also does not weigh Glenn's testimony that he was "fading in and out of consciousness" on the floor of the lobby and ultimately had to be returned to his cell in a wheelchair. Glenn dep., ECF No. 39-3, PageID.274. Importantly, McClellan testified that seeing Glenn on the floor "would have given [her] pause that he was in need of medical care." McClellan dep., ECF No. 39-4, PageID.286. She called Massey back again, but Massey advised her to send Glenn back his cell with instructions to notify the medical staff if his condition worsened further. *Id.* at PageID.290-91; Medical Records, ECF No. 39-5, PageID.298. She did not argue with Massey, yet she was the one in personal contact with the plaintiff in distress. These facts are sufficient to support a finding that McClellan "(1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, (2) drew the inference, and (3) disregarded the excessive risk to inmate safety by failing to act," *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 944 (6th Cir. 2022) (citing *Farmer*, 511 U.S. at 837), that is, that she consciously disregarded the risk to Glenn's health by refusing further treatment and returning him to his cell. A jury can find conscious disregard when presented with evidence of an inmate in severe pain, unconscious and lying on the floor, and unable to return to his cell under his own power. Glenn is entitled to prove the subjective component in "the usual ways, including inference from circumstantial evidence." *Farmer*, 511

U.S. at 842.  "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Terrance*, 286 F.3d at 843 (quoting *Farmer*, 511 U.S. at 842).

The magistrate judge justified her conclusion in part by comparing the case to *Winkler v. Madison County*, 893 F.3d 877 (6th Cir. 2018).  There, an inmate in a county jail reported to a nurse that he was experiencing various symptoms that he attributed to heroin withdrawal.  *Id.* at 886.  She relayed this information to a supervising nurse practitioner, and they developed a treatment plan focused on the inmate's high blood pressure and withdrawal symptoms and sent him back to his cell.  *Id.* at 886-87.  Over the following days, the inmate's condition deteriorated, and he was taken to be seen by the on-call nurse, where he collapsed.  *Id.* at 889.  The inmate later was determined to have died from a perforated duodenal ulcer.  *Ibid.*  The Sixth Circuit affirmed the trial court's conclusion that the inmate's estate had not created a fact dispute on the subjective component of a claim against the nurse because she provided treatment consistent with the inmate's symptoms at the time (that is, before he collapsed) and believed he was being treated according to the supervising nurse practitioner's orders over the weekend.  *Id.* at 894-95.

The parallels drawn by the magistrate judge between Winkler's nurse and the facts in the present record break down when one considers the events after McClellan's initial examination. After McClellan later encountered Glenn on the floor, she did not gather further information about his condition or render any treatment; she merely relayed information to Massey, who repeated her direction that Glenn be returned to his cell.  In contrast, the nurse in *Winkler* developed a treatment plan for the inmate's withdrawal symptoms that she fully anticipated would offer him relief over the weekend.  *Winkler*, 893 F.3d at 895.  McClellan points out that she "performed her duties as a nurse in collecting information about Glenn and providing that information to a medical

- 13 -

professional qualified to evaluate [him]." ECF No. 43, PageID.399. That may be true, but she does not cite a case holding that a nurse may be relieved of her constitutional obligations merely because she followed an order of a supervising medical provider, particularly one who was not present to observe the patient's condition. "'[S]ince World War II, the 'just following orders' defense has not occupied a respected position in our jurisprudence, and [government actors] in such cases may be held liable under § 1983 if there is a reason why any of them should question the validity of that order.'" *Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010) (quoting *O'Rourke v. Hayes*, 378 F.3d 1201, 1210 n.5 (11th Cir. 2004)); *Grossman v. City of Portland*, 33 F. 3d 1200, 1209 (9th Cir. 1994) (explaining that section 1983 defendants are not "immune for the results of their official conduct simply because they were enforcing policies or orders promulgated by those with superior authority"); *Brent v. Ashley*, 247 F.3d 1294, 1305 (11th Cir. 2001) ("following orders does not immunize government agents from civil rights liability").

Glenn submitted sufficient evidence to defeat summary judgment on the subjective component of his claim. His first objection to the report and recommendation will be sustained.

B.

Glenn next objects to the magistrate judge's conclusion that qualified immunity shields McClellan from liability, arguing that he had a constitutional right to medical care and that this right was clearly established. The parties do not dispute the articulation of the governing law. The doctrine of qualified immunity insulates state actors from liability so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once the qualified immunity defense is raised, Glenn "must show that (1) the defendant violated a constitutional right and (2)

that right was clearly established." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016) (citing *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013)).

In her report, the magistrate judge found that the non-precedential decision of *Estate of Majors v. Gerlach*, 821 F. App'x 533 (6th Cir. 2020), was controlling because of its discussion on whether clearly established law requires a nurse to second-guess the judgment of a medical provider. That case is not a perfect fit. It involved a claim against an inmate's medical team for failing to treat his multiple sclerosis (MS) despite being informed of the diagnosis. *Majors*, 821 F. App'x at 535. Majors's MS diagnosis had been confirmed by prison authorities in Minnesota, where an established plan of treatment had been in place. Although those prison records were available to MDOC medical personnel, they refused to continue the medication injections that appeared to be effective. Majors suffered from a long-term, chronic medical condition and his treatment was in the hands of two physician's assistants, who were making the medical decisions. The court held that the physician's assistants were not entitled to qualified immunity, but the nurse defendants were immune because, although the "nurses may have been aware of [Majors's] diagnosis and treatment history, there is no evidence that they could have meaningfully influenced his course of treatment." *Majors*, 821 F. App'x at 547. The *Majors* court relied on *Winkler*, where a nurse "'gathered information about [the plaintiff's] condition, provided it to a medical professional qualified to evaluate him, and followed the directions of that medical professional,'" and where "the nurse believed that the prisoner's condition would be adequately treated by following those orders." *Ibid.* (quoting *Winkler*, 839 F.3d at 894-95).

In this case, there was no chronic condition that was the subject of continuing, supervised treatment. Glenn presented with an acute condition, one that McClellan herself perceived as

- 15 -

serious enough to "give [her] pause to think that he was in need of medical care."  McClellan dep.,
ECF No. 39-4, PageID.286.  No other medical provider had seen or evaluated him.

Nonetheless, application of this defense requires a close look at the interplay of the facts
of the case and the contours of the constitutional right asserted by Glenn. "[B]ecause 'immunity
protects all but the plainly incompetent or those who knowingly violate the law,' [the] court must
not 'define clearly established law at a high level of generality.'" *Tlapanco v. Elges*, 969 F.3d 638,
649 (6th Cir. 2020) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)).  "A right is 'clearly
established' if '[t]he contours of the right [are] sufficiently clear that a reasonable official would
understand that what he is doing violates that right.'" *Baynes v. Cleland*, 799 F.3d 600, 610 (6th
Cir. 2015) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Even when there is no
case defining a constitutional right that directly mirrors the fact pattern confronted by the
defendant, "'an official can be on notice that [her] conduct violates established law even in novel
factual situations.'" *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 898 (6th Cir. 2019) (quoting
*Littlejohn v. Myers*, 684 F. App'x 563, 569 (6th Cir. 2017)). The touchstone of the "clearly
established" inquiry is "fair warning." *Baynes*, 799 F.3d at 612-13 (quoting *Hope v. Pelzer*, 536
U.S. 730, 741 (2002)). "If the law did not put the officer on notice that [her] conduct would be
clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*,
533 U.S. 194, 202 (2001).

When the qualified immunity defense is raised in a motion for summary judgment, courts
must weave the summary judgment standard into each step of the qualified immunity analysis.
*Scott v. Harris*, 550 U.S. 372, 378 (2007).  Glenn is obliged to demonstrate with evidence in the
record both that the challenged conduct violated a constitutional right and that the right was clearly
established at the time.  *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016) (citing *Quigley*,

707 F.3d at 680). "If the plaintiff fails to establish either element, the defendant is immune from

suit." *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). But under the summary judgment standard,

the Court must view the facts in the light most favorable to the plaintiff, *Saucier*, 533 U.S. at 201;

"[i]n qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts,"

*Scott*, 550 U.S. at 378.

The record developed in this case shows that after her first call with defendant Massey,

McClellan returned to find Glenn on the floor of the lobby writhing in such severe pain in his

stomach that he could not stand or walk on his own. Glenn was fading in and out of consciousness.

McClellan testified that she lacked the authority to send a patient to the hospital herself unless he

was unconscious and a medical provider was unavailable. *Id.* at PageID.292. But when McClellan

called Massey a second time, she did not inform her of her belief that Glenn needed serious medical

attention, and she did not argue with the instruction to send Glenn back to his cell, despite the fact

that he could not ambulate under his own power.

It is apparent from the record that McClellan "could have meaningfully influenced

[Glenn's] course of treatment" by sending him to the hospital. *Majors*, 821 F. App'x at 547. But

that would have required her to overrule the decision of her superior, who told her to send the

plaintiff back to his cell. The magistrate judge correctly observed that the plaintiff cited no case

clearly establishing an obligation by a nurse to take such action. Glenn's condition plainly called

for some immediate medical care, but the decision not to provide it was Massey's. Perhaps

McClellan could be faulted for not sharing her concern with Massey or failing to convey an

accurate picture of Glenn's condition. But again, the plaintiff has not shown that the right to a

fulsome description of his condition by the nurse on the ground to the remote medical

decisionmaker was clearly established in Eighth Amendment jurisprudence.  For that reason, Glenn has not overcome McClellan's assertion of qualified immunity.

The plaintiff's second objection to the report and recommendation will be overruled.

III.

The magistrate judge did not conclude correctly that the evidence failed to support a deliberate indifference claim under the Eighth Amendment.  However, the plaintiff failed to offer evidence that created a fact question sufficient to defeat the defense of qualified immunity, as the magistrate judge suggested.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation issued (ECF No. 41) is **REJECTED IN PART AND ADOPTED IN PART**, and the plaintiff's objections (ECF No. 42) are **SUSTAINED IN PART AND OVERRULED IN PART**.

It is further **ORDERED** that defendant McClellan's motion for summary judgment (ECF No. 38) is **GRANTED** for the reasons stated in this opinion and order.

It is further **ORDERED** that the complaint against defendant Jodi McClellan, **only**, is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the order of reference in this case is **WITHDRAWN**, and counsel for the remaining parties shall appear for a status conference on **October 3, 2024 at 3:30 p.m.** to discuss a further case management schedule.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 17, 2024